| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES -- GENERAL | PRIORITY SEND<br><br>JS - 6 |

Case No.  **CV 13-7431-JFW (VBKx)**                                      Date:  January 9, 2014

Title:      Tae Hee Lee, et al. -v- Toyota Motor Sales, U.S.A., Inc., et al.

**PRESENT:**

   HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [filed 11/25/13; Docket No. 15]

   On November 25, 2013, Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota") filed a Motion to Dismiss the First Amended Complaint ("Motion").  On December 9, 2013, Plaintiffs Tae Hee Lee ("Lee") and Alan Quan ("Quan") (collectively, "Plaintiffs") filed their Opposition.  On December 16, 2013, Toyota filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's December 30, 2014 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.   Factual and Procedural Background**

   **A.   The PCS**

   The Advanced Technology Package is an option available on certain Prius vehicles.  The Advance Technology Package includes a navigation system, a dynamic radar cruise control, lane-keeping assist, and a pre-collision system ("PCS").  Although Plaintiffs' only complaint involves one aspect of the PCS, in order to understand Plaintiffs' claims, it is necessary to understand each function of the PCS.  The PCS provides multiple integrated pre-collision features that are automatically engaged depending on the specific pre-collision scenario involving a frontal collision and the driver's reaction to that scenario.  As described in the owner's manual, the PCS

includes the following functions: (1) pre-collision seat belts (front seat belts only)[1]; (2) pre-collision brake assist[2]; and (3) automatic pre-collision braking.[3]  If a Prius equipped with PCS detects a possible collision, the driver is warned and the seat belts automatically tighten in anticipation of a collision.  If the driver reacts to the warning and applies the brake pedal, the system applies greater braking force to shorten the stopping distance in an attempt to prevent, or lessen the impact of a crash.  If the driver does not attempt to affirmatively apply the brakes, the PCS automatic pre-collision braking automatically applies the brakes to reduce the collision speed when the collision is unavoidable.  Plaintiffs do not challenge the efficacy of the pre-collision seat belts or the pre-collision brake assist.  With respect to the automatic pre-collision braking function, Plaintiffs do not challenge the adequacy of the warning light, display, and buzzer.  Instead, Plaintiffs limit their claims to the automatic braking feature of the pre-collision braking function.  Specifically, Plaintiffs allege in their First Amended Complaint that only a "negligible" reduction in speed is achieved by the automatic pre-collision braking function, and, thus, the automatic pre-collision braking function is ineffective.  First Amended Complaint ("FAC"), ¶¶ 3 and 5.

### B.     The Plaintiffs

Lee alleges that he purchased a "used" 2010 Toyota Prius on September 30, 2010, from a BMW dealership.  FAC, ¶ 12.  Lee does not allege that he received or reviewed any materials from Toyota about the PCS or the automatic pre-collision braking feature, or that he saw any advertisements by Toyota discussing those features before deciding to purchase his Prius.  *See id.*, ¶¶ 11-15.  Instead, Lee alleges that he "searched online for information about" the PCS at various "vehicle review sources," which described "PCS as providing automatic braking in unavoidable frontal collision accidents."  *Id.*, ¶ 14.  However, Lee does not identify any specific statements or authors of those statements.  *Id.*  Lee does not allege that he read the owner's manual or any applicable warranty material before making his purchase.  Lee has never experienced any problems with his vehicle's automatic pre-collision braking feature and he has never been involved in an unavoidable frontal collision in which the vehicle did not slow automatically before impact.  Lee alleges, in conclusory fashion, that the "PCS was ineffective or not included as part of the options package purchased."  *Id.*, ¶ 17.

Quan alleges that he purchased a new 2012 Toyota Prius on January 1, 2013.  *Id.*, ¶¶ 20-21.  Quan alleges that he paid $5,580 for an "Advanced Technology Package" that included a PCS.  Quan also alleges that he decided to purchase his vehicle based on his review of a brochure and "listening to the salesperson," who "describ[ed] the safety value of crash mitigation in rear-end accidents provided by the PCS by automatically applying the brakes in unavoidable frontal

---

[1]  If the pre-collision sensor detects that a collision is unavoidable, the pre-collision seat belt system will retract the seat belt before the collision occurs.

[2]  When there is a high possibility of a frontal collision, the pre-collision braking assist system applies greater braking force in relation to how strongly the brake pedal is depressed.

[3]  When there is a high possibility of a frontal collision, the automatic pre-collision braking system warns the driver by activating a warning light, warning display, and buzzer.  If the system determines that a collision is unavoidable, the brakes are automatically applied to reduce the collision speed.  Pre-collision braking can be disabled using the pre-collision braking off switch.

collisions." *Id.* ¶ 22.  Quan does not specify any particular statement by Toyota that he read or heard before making his purchase that he now claims might be false.  In addition, although Quan alleges that he was "provided an owner's manual," he does not state when he received that owner's manual (*i.e.*, before or after his purchase) or whether he read it before making his purchase.  *Id.*  Quan has never had any negative experience with his vehicle or its automatic pre-collision braking feature.

### C.     The IIHS Test

Plaintiffs' claims are based on a September 27, 2013 Insurance Institute for Highway Safety ("IIHS")[4] report detailing the results of its testing of the automatic pre-collision braking feature on various vehicles, including a 2013 model year Prius v.[5]  The IIHS reported that the 2013 Prius test vehicle did brake automatically and did reduce the vehicle's speed prior to a frontal collision under IIHS test conditions.[6]  However, the report concluded that the tested Prius model did not automatically reduce speed to the extent IIHS had subjectively determined qualified for its own "advanced" rating.[7]

The protocol for the IIHS test procedure included driving the test vehicle at two speeds (12 mph and 25 mph) towards a target "designed to simulate the back of a car," and graded the vehicle's performance based on a point scale.  *See* September 27, 2013 IIHS Report (attached as Exhibit 2 to the Declaration of J. Gordon Cooney, Jr.), pp. 2-4.  Vehicles equipped with an autobraking capability (like the PCS) and registering specified speed reductions in the IIHS test were awarded points on an escalating scale depending on the degree to which the vehicle was slowed.  *Id.*  Vehicles which registered speed reductions greater than 5 mph were awarded an "advanced" rating, but those which registered reductions greater than 0 mph but less than 5 mph received no points.[8]  *Id.*  The 2013 Prius model tested by IIHS did register speed reductions, but

---

[4]   IIHS is not a governmental entity, and it does not set standards for or on behalf of any governmental entity that binds automobile manufacturers.

[5]   The IIHS report was released three years after Lee purchased his used Prius and nearly 10 months after Quan purchased his Prius.  In addition, the report tested the 2013 model year Prius v, which is different from either Plaintiffs' model year vehicles.

[6]   Accordingly, the statement in the owner's manual that "[i]f the system determines that a collision is unavoidable, the brakes are automatically applied to reduce the collision speed" is unquestionably true.

[7]   Although Plaintiffs base their claims on the conclusions reached by the IIHS, Plaintiffs fail to describe the IIHS test protocol, or allege what the IIHS ratings actually mean.  Moreover, Plaintiffs simply ignore the fact that the IIHS test of the 2013 Prius actually confirms that the PCS reduced the speed of the vehicle as represented by Toyota.

[8]   In addition to earning a rating based on the 5 mph speed-reduction criteria created by IIHS, test vehicles also could earn a "basic" rating if they were equipped with a "Forward Collision Warning System" as defined by the National Highway Traffic Safety Administration ("NHTSA").  Plaintiffs also allege in the First Amended Complaint that the Prius v lacks such a "Forward

because those reductions were less than the 5 mph criteria set by IIHS, it did not earn any rating points under IIHS' private rating system.  Declaration of J. Gordon Cooney, Jr., Exh. 3.  Specifically, the IIHS report on the test 2013 Prius vehicle's actual performance indicates that "impact speed was reduced by 1 mph" in "the 12 mph IIHS test" and that "impact speed was reduced by 2 mph" in "the 25 mph test."  *Id.*  Although the 2013 Prius' pre-collision braking system did not meet the IIHS' criteria for an "advanced" rating, IIHS still rated the vehicle a "Top Safety Pick."  *Id.*

### D. Procedural Background

On October 8, 2013, a mere ten days after the IIHS report regarding the 2013 Prius was released, Plaintiffs filed a class action Complaint against Defendants.  On November 15, 2013, Plaintiffs filed a First Amended Complaint, alleging claims for: (1) breach of express warranty; (2) breach of implied warranty; (3) fraud; (4) breach of contract; (5) breach of duty of good faith and fair dealing; (6) violation of California Unfair Competition Laws ("UCL"); (7) violation of California Consumer Legal Remedies Act ("CLRA"); and (8) unjust enrichment.  In the First Amended Complaint, as detailed above, Plaintiffs, on behalf of a putative class of all "consumers who purchased or leased the Toyota Prius v and other Toyota models equipped with the optional Pre-Collision System," allege that the pre-collision braking feature of the PCS on their respective Prius vehicles is ineffective because only a negligible reduction in speed is achieved by the automatic pre-collision braking function.  FAC, ¶¶ 1-5.  Plaintiffs' claims are based entirely on the 2013 Prius model tested and described in the IIHS report, which was published well after Plaintiffs purchased their vehicles.  FAC, ¶ 4.  Plaintiffs do not allege in the First Amended Complaint that Toyota made any representation regarding the amount of speed reduction or that Plaintiffs had any negative experience with their PCS systems.

## II.  Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1) and Standing

An Article III federal court must determine whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution.   To satisfy the Article III standing requirement, a plaintiff must prove: (1) he has suffered an "injury in fact," i.e., an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection by proving that his injury is fairly traceable to the challenged conduct of the defendant; and (3) his injury will likely be redressed by a favorable decision.  *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000)*; Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-62 (1992).  At least one named plaintiff must have suffered an injury in fact. *See Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir.2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief

---

Collision Warning System."  FAC, ¶ 4.  However, the Prius' PCS is not a warning system because systems that "slow or stop the vehicle" do not qualify as "forward collision warning systems" as defined by the NHTSA, even if those systems include, as the Prius PCS does, visual and audio warnings.

on behalf of himself or any other member of the class."). The party seeking to invoke federal court jurisdiction has the burden of establishing the constitutional elements of standing. *See Lujan*, 504 U.S. at 561.  This threshold requirement applies equally to named plaintiffs in a putative class action.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).  The Ninth Circuit has emphasized that "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

In addition, under California's UCL, a private person has standing only if he "has suffered injury in fact ***and*** has lost money or property as a result of the unfair competition."  Cal. Business & Professions Code § 17204 (emphasis added); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  Similarly, to bring a case under the CRLA, a plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage."  *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (internal quotations omitted).

### B.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).  However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment.  *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend.  Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655,

658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### C. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirement of Rule 9(b) applies not only where fraud is an essential element of a claim, but where the claim is "grounded in fraud" or "sounds in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)

The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672. In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

## III. Discussion

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

Plaintiffs argue that they have alleged the required "injury in fact" under Article III as well as the UCL and CLRA to establish their standing to bring this action on several different theories. As to Plaintiffs economic injury theory, Plaintiffs argue that their allegations that they overpaid for their vehicles, that they did not receive the benefit of their bargain, and that they received vehicles that diminished in value when the ineffectiveness or defect in the PCS was exposed by the IIHS are sufficient to establish their standing. However, the Court disagrees. Based on the unique facts in this case including that the PCS actually performs as described and that Plaintiffs have not experienced any problems with the PCS or any actual diminished value of their vehicles, the Court concludes that Plaintiffs are distinguishable from the Plaintiffs in cases such as *Kearney*, *Cole*, *Bristow*, *Wolin*, and *Daffin* relied on by Plaintiffs in their Opposition.

There can be no serious dispute that a purchaser of a product who receives the benefit of his bargain has not suffered Article III injury-in-fact traceable to the defendant's conduct. *See, e.g., Birdsong*, 590 F.3d at 961-62; *Parker v. Iolo Tech., LLC*, 2012 WL 4168837, *3 (C.D. Cal. Aug. 20, 2012); *Whitson v. Bumbo*, 2009 WL 1515597, *6 (N.D. Cal. Apr. 16, 2009). In this case, Plaintiffs have not alleged an actual economic injury because they have not had any negative experience with the PCS and have not identified any false representations about the automatic pre-collision braking feature made by Toyota. *See, e.g., Whitson*, 2009 WL 1515597, at *2, 4-6 (holding no Article III standing where the plaintiff alleged that a child safety seat was defective because of the propensity of children to fall from it under certain circumstances but where there were no

allegations that any child actually fell from the seat she purchased or that she saw any representations suggesting the seat was safe for use under those circumstances). In fact, Plaintiffs concede in their Opposition that the pre-collision braking system does automatically slow the vehicle in the event of an unavoidable collision. Opposition, pp. 7 and 12. Instead, Plaintiffs argue that they did not receive the benefit of their bargain because although admittedly the pre-collision braking system does automatically slow the vehicle in the event of an unavoidable collision, that reduction in speed is "negligible," and, thus, they did not receive some undefined reduction in speed that they allegedly paid for when they purchased their vehicles.

However, Plaintiffs do not have a bargained-for benefit claim based on the extent of performance of the PCS in the absence of a claim that Toyota made representations about the amount or extent of speed reduction provided by the PCS. *Birdsong*, 590 F.3d at 961 (holding that plaintiffs who alleged that iPods were defective because they posed a risk of hearing loss but who did not actually experience hearing loss had not alleged facts sufficient to support standing because "[t]hey have not alleged that they were deprived of an agreed-upon benefit in purchasing their iPods. The plaintiffs do not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time"); *see also In re Toyota Motor Corp. Hybrid Brake Litig.*, 915 F.Supp. 2d 1151, 1159 (C.D. Cal. 2013) (granting summary judgment on benefit of the bargain claim where plaintiff received "safe and operable" anti-lock braking system, which was "precisely what he bargained for"); *Boysen v. Walgreen Co.*, 2012 WL 2953069, *7 (N.D. Cal. July 19, 2012) (dismissing the plaintiff's claim regarding the defendant's failure to disclose the presence of arsenic and lead in a beverage described as "healthy" and "100% juice" due to a lack of economic injury suffered by the plaintiff because he could only allege that "the levels of lead and arsenic in defendant's product were unsatisfactory to him," and not that the juice physically harmed him or "function[ed] less than advertised").

Finally, Plaintiffs' conclusory allegations that they overpaid for PCS because their vehicles "diminished in value when the ineffectiveness of the PCS was exposed by the IIHS" are insufficient. In cases such as this one, where the alleged wrong stems from the assertion of insufficient performance of a product or its features, a plaintiff must allege "something more" than "overpaying for a 'defective' product" to support a claim. *In re Toyota Motor Corp.*, 790 F.Supp. 2d 1152, 1166 n. 11 (C.D. Cal. 2011) (claims of "diminished value" and "overpayment" were only allowed to proceed for those plaintiffs who had pled "something more," including having stopped using vehicles for fear of personal safety or having sold or traded-in vehicles at a loss due to depressed resale values following recalls and publicized alleged incidents). In this case, Plaintiffs do not claim that the pre-collision braking feature fails to work as described; that they experienced any problems with PCS; that they are unwilling to drive their vehicles; that they sold or traded-in their vehicles at a loss; or any other facts that plausibly demonstrate any diminished value in their vehicles. Therefore, Plaintiffs have failed to plead the required "something more" than alleged overpayment for the PCS.

For all the foregoing reasons, the Court finds that the Plaintiffs do not meet the standing requirements of Article III, the UCL, or the CRLA, and, therefore, cannot pursue these claims. Accordingly, Toyota's Motion is **GRANTED**, and because amendment is futile, Plaintiffs' First Amended Complaint is **DISMISSED without leave to amend**.

### B.   Motion to Dismiss Pursuant to Rule 12(b)(6)

In addition to challenging Plaintiffs' standing to assert their claims, Toyota moves to dismiss all claims alleged in the First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Although the Court concludes that Plaintiffs lack standing, the Court will also rule on Toyota's motion to dismiss each claim alleged in the First Amended Complaint.

### 1.   Plaintiffs' CLRA Claim Fails

CLRA makes illegal various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Conduct that is "likely to mislead a reasonable consumer" violates the CLRA.  *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 680 (2006) (*quoting Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 54 (2003)).  A "reasonable consumer" is "the ordinary consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture"  *Id.* (citing 1A *Callmann on Unfair Competition, Trademarks and Monopolies* § 5:17(4th ed. 2004)).

Section 1770(a)(4) bans the use of "deceptive representations . . . in connection with goods or services."  Section 1770(a)(5) prohibits "[r]epresenting that goods or services have ... characteristics, ingredients, uses, [or] benefits ... which they do not have"  The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  *Colgan*, 135 Cal. App.4th at 680.

In this case, Plaintiffs' CLRA claim fails because, Plaintiffs have failed to identify any statement made by Toyota that misrepresents the performance of automatic pre-collision braking feature.  The only statements identified by Plaintiffs in support of their misrepresentation claims are: (a) a statement in the owner's manual for the 2012 Prius v that "[i]f the [PCS] determines that a collision is unavoidable, the brakes are automatically applied to reduce the collision speed" and (b) a statement from the brochure for the 2013 Prius v stating "[p]lus, an available Pre-Collision System (PCS) employs the radar to determine if a frontal collision is unavoidable, and automatically applies to brakes."[9]  FAC, ¶ 35.  However, it is undisputed that those statements are

---

[9] Plaintiffs include in the First Amended Complaint some vague references to statements found on Internet consumer information websites that Plaintiffs allege "on information and belief" came from Toyota, statements in Toyota marketing material, and oral statements allegedly made by dealership sales associates to which Plaintiffs claim they were exposed.  FAC, ¶¶ 14 and 22.  However, those types of statements are precisely the sort of "neutral facts" that the Ninth Circuit has found inadequate under Rule 9(b) "to give [defendants] the opportunity to respond to the alleged misconduct."  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126-27 (9th Cir. 2009) (holding that alleged exposure to "representations through (1) Ford's televised national marketing campaign; (2) sales materials found at the dealership where he bought his vehicle; and (3) sales personal working at the dealership" did not satisfy Rule 9(b)).

true because the PCS does come equipped with a pre-collision braking feature that automatically applies the brakes to reduce vehicle speed. Accordingly, the statements relied on by Plaintiffs are not actionable misrepresentations. *See, e.g., Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 834 (2006) (holding that car buyers did not state claim under CLRA because complaint "fail[ed] to identify any representation by Honda that its automobiles had any characteristic they do not have"); *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) (dismissing CLRA claim because complaint failed to identify any representation by defendant that the computers at issue had any characteristic they do not have). Moreover, even assuming those statements were somehow false, Plaintiffs have not alleged that they relied on these statements in deciding to purchase their vehicles.[10]

In addition, Plaintiffs' argument in their Opposition that the statements made by Toyota may be "technically true" but misleading because the speed reduction provided by the pre-collision braking system is "negligible" is unpersuasive. Plaintiffs have not alleged that they saw, read, or in some way relied on a statement by Toyota promising that the pre-collision braking feature in their Prius' PCS would operate at a particular level of efficiency, or that it would conform to any particular standard, much less the private IIHS criteria reflected in the September 2013 IIHS report test results (which post-dates Lee's purchase by three years and Quan's by nearly 10 months) or the NHTSA definition of a "frontal collision warning system" (which is inapplicable to systems like PCS that have an automatic braking feature). *See, e.g., Paduano v. American Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1470-71 (2009) (holding that "there is nothing false or misleading about . . . advertising . . . that identif[ies] the EPA fuel economy estimates," where the plaintiff was alleging the EPA fuel mileage estimates in the brochure were misleading because the vehicle achieved a much lower fuel economy under everyday driving conditions); *see also Kearney v. Hyundai Motor Co.*, 2010 WL 9093204 (C.D. Cal. June 4, 2010) (dismissing CLRA claim based on plaintiff's allegation that defendant's statement that an airbag system "sense the weight and position of the right front passenger to activate or deactivate the right passenger airbag" as needed was a misrepresentation because the Court concluded that plaintiff could not "read into" defendant's representation "properly function" because "nowhere does Hyundai so represent"). Similarly, Plaintiffs' argument that Toyota failed to disclose that the PCS is "defective" because it only provides a negligible level of speed reduction is also unpersuasive.[11] Plaintiffs have failed to allege any facts demonstrating that the PCS is "defective," or, if it was, that Toyota was aware that it was defective at the time Plaintiffs purchased their vehicles.[12] *Wilson v. Hewlett-Packard Co.*,

---

[10] Moreover, it would be impossible for Lee to claim that he had relied on those statements because the written materials containing those statements were published approximately two years after he purchased his used Prius in 2010.

[11] All of Plaintiffs' claims, whether styled as a claim for misrepresentation, omission, or defect, are based on Plaintiffs' contention that the amount of speed reduction offered by the automatic pre-collision braking feature of the PCS was negligible, and, thus, ineffective.

[12] In fact, there are no allegations in the First Amended Complaint that plausibly demonstrate or suggest that Toyota had any knowledge of the level of effectiveness of the PCS until the IIHS test results were released in September 2013, well after Plaintiffs purchased their vehicles. FAC, ¶¶ 5-7. Toyota cannot be held liable for making allegedly false statements if it lacked knowledge that those statements were false at the time they were made. *See, e.g., Neu v.*

668 F.3d 1136, 1145 (9th Cir. 2012) (confirming that plaintiffs must "sufficiently allege that a defendant was aware of a defect at the time of the sale to survive a motion to dismiss"); *In re Sony*, 758 F.Supp. 2d 1190, 1095 (N.D. Cal. 2007) ("Sony had no duty to disclose facts of which it was unaware").  In addition, these allegations "must satisfy the heightened pleading standards of Rule 9(b)."  *Eisen v. Porsche Cars North America, Inc.*, 2012 WL 84109, *3 (C.D. Cal. Feb. 22, 2012) (dismissing fraud, CLRA, and UCL claims that did not meet the heightened Rule 9(b) standard); *Kent v. Hewlett-Packard Co.*, 2010 WL 2681767, *10 (N.D. Cal. July 6, 2010) ("Plaintiffs have not alleged with specificity any other facts that could support a claim that HP knew the computers in suit were defective at the time of sale or that HP actively concealed a defect at the time of sale").

Accordingly, Defendant's Motion with respect to Plaintiffs' seventh claim for violation of the CLRA is **GRANTED**, and, because amendment is futile, Plaintiffs' seventh claim for violation of the CLRA is **DISMISSED without leave to amend**.

### 2. Plaintiffs' UCL Claim Fails

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof.Code §§ 17201, 17203.  "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  *Id.*, § 17200. The California Supreme Court has construed the term "unfair competition" broadly*.  See Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) ("[Section 17200] defines 'unfair competition' to include any unlawful, unfair or fraudulent business act or practice . . . Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law . . . By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable . . . However, the law does more than just borrow. The statutory language referring to any unlawful, unfair or fraudulent practice . . . makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent") (internal quotations omitted); *see also Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 676–77 (2006) ("The purpose of the UCL 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services' . . . Thus, the scope of the UCL (Bus. & Prof. Code, § 17200 et seq.) is 'broad.'  It 'covers a wide range of conduct'") (citations and footnote omitted).

In the First Amended Complaint, Plaintiffs allege that Toyota engaged in "unlawful, unfair and/or fraudulent" conduct.  FAC, ¶¶ , 85 and 89.  However, Plaintiffs' UCL claim fails under all three prongs.  Plaintiff cannot state a UCL claim based on fraud because Plaintiffs have failed to identify any untruthful statement made by Toyota about the performance of the automatic pre-

---

*Terminix International, Inc.*, 2008 WL 2951390, *3 (N.D. Cal. July 24, 2008) (granting motion to dismiss plaintiff's fraud-based UCL and CLRA claims where the study plaintiff claimed demonstrated the falsity of the statements made by the defendant post-dated her transaction with defendant).

collision braking feature, or that the PCS was defective and that the alleged defect was not disclosed.[13] *See, e.g., Brothers v. Hewlett-Packard Co.*, 2006 WL 3093685, *5 (N.D. Cal. Oct. 31, 2006) (dismissing plaintiff's UCL claims and stating that "nevertheless, the statement is not actionable as there are no allegations that such fact is false or misleading . . . That the Pavilion contained an NVIDIA GeForce card is a factual assertion that cannot be disputed as false since plaintiff does not allege that the notebook does not come with that graphics card").

In addition, Plaintiffs cannot state a UCL claim based on unlawful conduct because Plaintiffs have failed to identify any violations of a predicate law necessary to support such a claim. *See e.g., Lopez v. Washington Mut. Bank, F.A.*, 302 F.3d 900, 907 (9th Cir. 2002) (holding that UCL borrows violations from other laws and treats them as independently actionable and, therefore, an "unlawful" UCL claim fails where there is no violation of a predicate law).

Moreover, although Plaintiffs allege that Toyota violated the UCL by engaging in "unfair" business practices, they cannot allege an "unfair" UCL claim without demonstrating, among other things, that they experienced an "injury" that "was substantial" and "could not have been avoided."[14] *Camacho v. Auto. Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006). It is undisputed that Plaintiffs did not suffer an injury because, as they admit in the First Amended Complaint, the automatic pre-collision braking feature operates as described. *See, e.g., Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1270-71 (2006) (holding that plaintiff had failed to allege an unfair business practice where defendant allegedly used less durable steel exhaust manifolds in order to profit from cost of repair and replacement parts because the "second amended complaint did not allege [defendant] made any representations regarding the composition of the exhaust manifolds").

Accordingly, Defendant's Motion with respect to Plaintiffs' sixth claim for violation of the UCL is **GRANTED**, and, because amendment is futile, Plaintiffs' sixth claim for violation of the UCL is **DISMISSED without leave to amend**.

### 3. Plaintiffs' Fraud Claim Fails

To state a fraud claim, a plaintiff must allege: (1) a false representation of a material fact, (2) knowledge of its falsity, (3) intent to defraud, (4) actual and justifiable reliance, and (5) resulting damage. *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1331 (1986). In addition, to successfully allege a claim for fraud against a corporation, a plaintiff must also allege "the names of the persons who allegedly made the fraudulent representation, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mutual Auto Insurance Co.*, 2 Cal. App. 4th 153, 157 (1991). "Plaintiffs must not only specify how alleged statements were false, but must specify how statements were false when they were made." *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 1497096 (E.D. Cal. Apr. 19,

---

[13] Because the truthfulness of the statements made by Toyota with respect to the automatic pre-collision braking feature of the PCS is discussed in detail in the section regarding Plaintiffs' CLRA claim, it will not be repeated here.

[14] Because Plaintiffs' lack of injury is discussed in detail in the standing section of this Order, it will not be repeated here.

2011).

In this case, Plaintiffs' claim for fraud fails because Plaintiffs have failed to identify any actionable statements or omissions attributable to Toyota about the performance of the automatic pre-collision braking feature. *Marolda v. Symantec Corp.*, 672 F.Supp. 2d 992, 1002 (N.D. Cal. 2009) (holding that in order to plead the circumstances of omission with specificity plaintiff "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information"); *Ehrlich v. BMW of North America, LLC*, 801 F.Supp. 2d 908 (C.D. Cal. 2010) ("In an omissions case, omitted information is material if a plaintiff can allege that, had the omitted information been disclosed, one would have been aware of it and behaved differently") (internal quotations omitted). In addition, Plaintiffs have failed to allege that Toyota knew that what Plaintiffs argue are misrepresentations were made with knowledge of their falsity or that Toyota had the intent to defraud Plaintiffs. *Oestreicher v. Alienware Corp.*, 544 F.Supp. 2d 964, 967, 974 n. 9 (N.D. Cal. 2008) (dismissing a claim that alleged in conclusory fashion that the manufacturer knew of the alleged defect but failed to disclose it to consumers). Moreover, Plaintiffs have failed to plead that they suffered any injury or other damages as a result of Toyota's alleged fraudulent conduct.

Accordingly, Defendant's Motion with respect to Plaintiffs' third claim for fraud is **GRANTED**, and, because amendment is futile, Plaintiffs' third claim for fraud is **DISMISSED without leave to amend**.

### 4. Plaintiffs' Breach of Express Warranty Claim Fails

California Commercial Code § 2313, which defines the term express warranty, applies to "transactions in goods." *See* Cal. Commercial Code § 2102; *see also* Cal. Civ. Code § 1791.2(a)(1) (defining "express warranty" as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or to provide compensation if there is a failure in utility or performance"). An express warranty is a term of the parties' contract. *See A.A. Baxter Corp. v. Colt Industries, Inc.*, 10 Cal.App.3d 144, 153 (1970) ("A warranty is as much one of the elements of sale and as much a part of the contract of sale as any other portion of the contract and is not a mere collateral undertaking . . . [T]o constitute an express warranty, the statement must be a part of the contract").

To prevail on a breach of express warranty claim, a plaintiff must prove that the seller: "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Rodarte v. Philip Morris*, 2003 WL 23341208, *7 (C.D. Cal. June 23, 2003).

In their First Amended Complaint, Plaintiffs allege that Toyota breached two express warranties: (1) a statement in "the owner's manual" that "the PCS package includes the function that the vehicle automatically brakes in unavoidable front-end collisions"; and (2) an alleged statement, for which no source is cited, that Toyota would "repair and/or replace defects in material

and/or workmanship free of charge that occurred during the applicable warranty period." FAC, ¶ 53. However, neither of these statements are sufficient to support Plaintiffs' breach of the express warranty claim. Statements from owner's manuals cannot form an express contractual obligation, and, thus cannot support a breach of express warranty claim. *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 931 (N.D. Cal. 2012) (dismissing breach of the express warranty claim and cautioning that the position advanced by plaintiff that "an instructional manual is a contract would vastly expand the scope of a manufacturer's express and implied warranties, creating a perverse incentive for manufacturers to avoid including comprehensive manuals with their products").

In addition, to the extent that Plaintiffs allege a design defect in the PCS, design defects fall outside the scope of a warranty covering "defects in material and/or workmanship." *See In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010) (granting motion to dismiss to extent plaintiffs based "express written warranty claims [against Toyota] on an alleged design defect"); *Rice*, 2013 WL 146270, *11 (dismissing warranty claim because "the phrase 'free from defects in material and workmanship' in defendant's limited warranty refers only to manufacturing defects, not design defects") (internal citations omitted). Moreover, Plaintiffs cannot establish a breach of express warranty where there are no allegations that Plaintiffs actually experienced a problem with the PCS and sought a repair during the express warranty period. *See Daugherty*, 144 Cal. App. 4th at 830 (holding that express warranties do not cover latent design defects); *see also In re Toyota*, 754 F. Supp. 2d at 1180 (dismissing claim because plaintiffs who did not seek "repairs . . . for SUA-related issues may not pursue a claim for breach of express warranty based on the written warranty").

In their Opposition, Plaintiffs argue that they have pled a breach of express warranty claim based on language from Toyota's "marketing brochure." However, even if their breach of express warranty claim was based on language from Toyota's marketing brochure (or they were given leave to amend to state such a claim), Plaintiff would still be unable to state a breach of the express warranty claim. The "marketing brochure" simply contains the unquestionably true statement that the pre-collision braking feature automatically reduces collision speed. In addition, Plaintiffs will never be able to connect the "marketing brochure" for a 2013 Prius v model to Lee's purchase of a 2010 Prius model or Quan's purchase of a 2012 Prius model. FAC, ¶¶ 12, 21. Moreover, Plaintiffs do not allege that they read or relied on the "marketing brochure" before making their purchases. *See In re Toyota*, 754 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010) ("Plaintiffs cannot base a claim on [an express warranty created by representations in advertisements] in the absence of allegations that they were exposed to them."); Cal. Comm. Code § 2313 (any affirmation made by the seller must form part of the "basis of the bargain").

Accordingly, Defendant's Motion with respect to Plaintiffs' first claim for breach of the express warranty is **GRANTED**, and, because amendment is futile, Plaintiffs' first claim for breach of the express warranty is **DISMISSED without leave to amend**.

### 5. Plaintiffs' Breach of Implied Warranty Claim Fails

An implied warranty of merchantability guarantees that "[g]oods to be merchantable must be at least such as: (a) [p]ass without objection in the trade under the contract description; and (b) [i]n the case of fungible goods, are of fair average quality within the description; and (c) [a]re fit for the ordinary purposes for which such goods are used; and (d) [r]un, within the variations permitted by

the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) [a]re adequately contained, packaged, and labeled as the agreement may require; and (f) [c]onform to the promises or affirmations of fact made on the container or label if any.  Cal. Commercial Code § 2314.  "Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law . . . [I]t provides for a minimum level of quality."  *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1295–96 (1995).  Thus, a plaintiff claiming breach of an implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use."  *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 406 (2003) (citing Cal. Commercial Code § 2314(2)); *see also Pisano v. American Leasing,* 146 Cal.App.3d 194, 198 (1983) ("Crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade").

     In their First Amended Complaint, Plaintiffs allege that Toyota breached the implied warranty of merchantability because the PCS "did not provide effective automatic braking in unavoidable front-end collisions," and, thus, their vehicles were "not in merchantable condition or quality and are not fit for their ordinary intended purpose."  However, these allegations are insufficient to support a claim for breach of the implied warranty of merchantability.[15]  The implied warranty of merchantability requires only that a vehicle be reasonably suited for ordinary use.  It need not be perfect in every detail so long as it "provides for a minimum level of quality."  *American Suzuki*, 37 Cal.App.4th at 1296 (*quoting Skelton v. General Motors Corp.*, 500 F.Supp. 1181, 1191 (N.D. Ill.1980), *rev'd. on other grounds*, 660 F.2d 311 (7th Cir.1981)).  The basic inquiry, therefore, is whether the vehicle was fit for driving.  *See Carlson v. General Motors Corp.*, 883 F.2d 287, 297 (4th Cir.1989) ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects.  Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable"), *cert. denied*, 495 U.S. 904 (1990); *Skelton*, 500 F.Supp. at 1191 ("Automobiles are designed for driving, and therefore the question in this case is whether the GM vehicles at issue were fit for that purpose"); *American Suzuki*, 37 Cal. App.4th at 1296 ("Courts in other jurisdictions have held that in the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation"); *Mercedes–Benz of North America, Inc. v. Garten*, 94 Md. App. 547, 563 (1993) (noting that "the car in question was accepted by another Mercedes–Benz dealer as a trade-in" in evaluating whether a 1990 300E "passed without objection in the trade under the contract description").

---

    [15]  Moreover, Plaintiffs cannot allege a viable claim because they admit that they did not purchase their vehicles from Toyota and, therefore, they were not in vertical privity with Toyota. *See* Cal. Com. Code § 2314; *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (applying California law and dismissing, for lack of vertical privity, claims by purchaser against manufacturer).  In fact, Lee purchased his vehicle from a BMW dealership.  Although Plaintiffs argue in their Opposition that the third party beneficiary exception and dangerous instrumentalities exception to the vertical privity requirement apply in this case, Plaintiffs fail to plead any facts in their First Amended Complaint or offer any persuasive argument in their Opposition that the Court should apply those exceptions in this case.  *See, e.g., In re Toyota*, 754 F. Supp. 2d at 1185-86 (declining to apply "dangerous instrumentalities" exception in an economic loss case involving perceived defects in plaintiffs' vehicles).

In this case, Plaintiffs have not alleged that they stopped using their vehicles. *See, e.g., Kent*, 2010 WL 2681767, at *4 (dismissing implied warranty claim because "[p]laintiffs do not allege that they have been forced to abandon the use of their computers"). In addition, Plaintiffs have not and cannot truthfully allege in light of the IIHS report that their pre-collision braking feature failed to automatically slow their vehicles in an unavoidable frontal collision. *See, e.g., Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, *4 (N.D. Cal. June 20, 2013) (holding that to maintain implied warranty claim, "'plaintiffs must allege that their product actually exhibited the alleged defect'") (quotations and citation omitted).

Accordingly, Defendant's Motion with respect to Plaintiffs' second claim for breach of the implied warranty of merchantability is **GRANTED**, and, because amendment is futile, Plaintiffs' second claim for breach of the implied warranty of merchantability is **DISMISSED without leave to amend**.

### 6. Plaintiffs' Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing Claims Fail

To allege a cause of action for breach of contract, Plaintiffs must allege each of the following elements: (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (emphasis omitted).

In this case, Plaintiffs disingenuously and in conclusory fashion allege the existence of a purchase contract with Toyota. However, such conclusory allegations are insufficient to support a claim for breach of contract. *See Zody v. Microsoft Corp.*, 2012 WL 1747844, at *4 (N.D. Cal. May 16, 2012) (*citing Twombly*, 550 U.S. at 555) ("To the extent that Plaintiff simply alleges a contract existed, that allegation is itself conclusory because the contract's formation and its terms (among other things) are unclear"); *see also Alvarado v. Aurora Loan Servs., LLC*, 2012 WL 4475330, at *4 (C.D. Cal. Sept. 20, 2012) (noting action based on written contract "must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference"). In addition, because Plaintiffs did not purchase their vehicles from Toyota, it would be impossible for them to allege such a purchase contract.[16]

Because Plaintiffs have failed to sufficiently allege the existence of a contract with Toyota, they also cannot state a claim for breach of the duty of good faith and fair dealing. *See Mejia v. EMC Mortg. Corp.*, 2011 WL 2470060, *10 (C.D. Cal. June 16, 2011) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship").

Accordingly, Defendant's Motion with respect to Plaintiffs' fourth claim for breach of contract and fifth claim for breach of the duty of good faith and fair dealing is **GRANTED**, and, because amendment is futile, Plaintiffs' fourth claim for breach of contract and fifth claim for breach of the

---

[16] As discussed above, to the extent Plaintiffs are claiming to be a third party beneficiary of a contract between Toyota and another party, they have failed to allege any facts in either their First Amended Complaint or Opposition to support that argument.

duty of good faith and fair dealing are **DISMISSED without leave to amend**.

### 7. Unjust Enrichment

Toyota moves to dismiss Plaintiffs' claim for unjust enrichment on the grounds that California law does not recognize such a claim for relief. The Court agrees. *See, e.g., Iezza v. Saxon Mortg. Services, Inc.*, 2010 WL 3834041, at *2 (C.D. Cal. Sept. 28, 2010) ("Under California law, a claim for unjust enrichment cannot stand alone as an independent claim for relief."); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) (internal citations omitted) ("[U]njust enrichment is not a cause of action. Rather, it is a general principle underlying various doctrines and remedies, including quasi-contract."); *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment."); *Ahadoot v. Babolat v. North America*, CV-13-02823, at p. 9 (C.D. Cal. Sept. 6, 2013) (holding that California law does not recognize unjust enrichment and restitution as independent causes of action). Accordingly, Defendant's Motion with respect to Plaintiffs' eighth claim for unjust enrichment is **GRANTED**, and, because amendment is futile, Plaintiffs' eighth claim for unjust enrichment is **DISMISSED without leave to amend**.

### IV. Conclusion

For all the foregoing reasons, Toyota's Motion is **GRANTED**. Plaintiffs' First Amended Complaint is **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice**.

IT IS SO ORDERED.